Howard T. Hogan, J.
This is a proceeding brought pursuant to article 78 of the Civil Practice Act to review and annul a determination of the respondent Board of Appeals and to direct the respondent Building Inspector to issue a permit which would allow the petitioner to place a one-family residence on a parcel of land owned by him. The pertinent facts are that in 1924 a Mr. and Mrs. Mooney purchased two lots known as lots 66 and 67 in Block 449, Section 55, on the Tax Map of the Town of Hempstead. The combined plot has a frontage of 52.04 feet on the south side of Centennial Avenue and a frontage of 137.18 feet on the east side of Pennsylvania Avenue. At that time a gasoline filling station was located at the northerly portion of the property and to the rear was located a one-family dwelling. The entire area was then unzoned. In 1930, a zoning ordinance was adopted which placed lots 66 and 67 in a “ C ” residential zone to a depth of 100 feet south from Centennial Avenue and the rear 37.18 feet in a “ B ” residential zone.
One month after the effective date of the ordinance, the Mooneys purchased the adjoining lots 68 and 69, which are the subject of the present proceeding. They are interior lots having a combined frontage of 50 feet on Pennsylvania Avenue and a depth of approximately 102 feet. The side line of this parcel forms a right angle with the Pennsylvania Avenue frontage of lots 66 and 67. Together, both parcels form an“ L ”, the north side line of lots 68 and 69 being coincident with the rear or southerly line of lots 66 and 67 for 50 feet of its entire length of 102.47 feet.
At all times lots 68 and 69 have had a total area of 5,176 square feet. They were, at the time of purchase and still are, in a “ B ” residence district. Until 1951 they met and exceeded the minimum area and other dimensional requirements for one-family dwellings in such a district.
In 1936, lots 66 and 67 were rezoned for their entire depth and placed in a business district so that the gasoline filling station which from 1930 to 1936 was a nonconforming use, was made, and continues to be, conforming.
In 1951, the minimum dimensional requirements for a plot in a “B” residence district for dwelling purposes were increased to an area of 6,000 square feet and a width of 55 feet at the setback line. The plot formed by lots 68 and 69 (which at all times have been unimproved) thereupon became substandard. On July 7, 1958, the Mooneys sold lots 66 and 67 *679 to one Haley and on the same day sold lots 68 and 69 to the petitioner, Creamer. The latter then applied for a permit to move the one-family house standing on lots 66 and 67 to lots 68 and 69. This was denied by the respondent Building Inspector. It has been suggested that Creamer’s purpose was to clear the former parcel for the expansion of the filling station use, but the court will not concern itself with matters that are extraneous to the single issue which has been raised by the petition and return.
Section B-10.1 of the Zoning Ordinance of the Town of Hemp-stead as amended on September 24, 1957, reads as follows: “ Sec. B-10.1. In a B ’ Residence District, no building shall be erected or altered on a lot or plot having an area of less than 6,000 square feet and a width of less than 55 feet at the required front setback line. The maximum lot or plot width or area regulations herein set forth shall not apply to any lot or plot having an area and/or width of less than that prescribed herein, provided such lot or plot has an area of at least 4,000 square feet and was under different ownership from that of any adjoining land on the effective date of this section and provided further that such lot or plot and any adjoining land did not come into common ownership since the effective date of this section.”
The petitioner has succeeded to the same rights possessed by the Hooneys and he is bound by the same limitations. It is conceded that his application to move an already existing house to his property should be treated as if it were an application for a permit to erect a new house thereon. In the opinion of the court, the language “ any adjoining land ” in the ordinance contemplates any land in the same use district which not only abuts on, but can be used in conjunction with, the property in question.
Following the refusal of the respondent Building Inspector to issue such a permit petitioner applied to the respondent Board of Zoning Appeals for a variance on the ground of practical difficulties and unnecessary hardship. After a hearing, the appeal was denied on the ground that the applicant’s position was the same as that of Mooney who, as a common owner, could have taken a rectangular portion from the rear of lots 66 and 67, having a frontage of 18 feet on Pennsylvania Avenue and a depth of 50 feet, and added it to lots 68 and 69, which would then have a combined area in excess of 6,000 square feet and a width of 68 feet at the setback line. The hardship, the board found also? was self-imposed.
*680 The court must disagree with the Board of Zoning Appeals. Aside from the fact that in an application for area variances the rule of self-imposed hardship does not apply (Matter of Village of Bronxville v. Francis, 1 A D 2d 236, affd. 1 N Y 2d 839) and the further fact that practical difficulties and unnecessary hardship were created not by the Mooneys but rather by the amendment which made lots 68 and 69 substandard, an even more compelling ground seems to be that the Mooneys, and concededly the applicant, who has succeeded to their rights, were and are entitled to avail themselves of the portion of section B-10.1 of the ordinance which provides that: ‘ The maximum lot or plot width or area regulations herein set forth shall not apply to any lot or plot having an area and/or width of less than that prescribed herein, provided such lot or plot has an area of at least 4,000 square feet and was under different ownership from that of any adjoining land on the effective date of this section and provided further that such lot or plot and any adjoining land did not come into common ownership since the effective date of this section.”
For every practical purpose these lots constituted two separate and distinct parcels. Ownership of both by the Mooneys never constituted a true merger. The town itself recognized this fact, first placing lots 66 and 67 in a business zone and lots 68 and 69 in a residence zone, and second, by requiring that a six-foot-high continuous stockade fence be placed by every owner' of business premises along the common boundary of such premises and any residential-zoned premises (Building-Zone Ordinance, § G — 12.1).
Justification for section B-10.1 must lie in the fact that the limitation of use which it places oij private property is outweighed by the promotion of the health, safety, morals, or general welfare of the community. An owner who has assembled property to form a single plot of 6,000 square feet or more may not divide it into plots of less than 6,000 square feet, but his excess land is not rendered worthless if it can be used to enlarge or enhance the value or attractiveness of the various permissible units. If, for example, one owns a plot of 10,000 square feet in a district in which the minimum area of a building plot is 6,000 square feet, he may not create two 5,000 square foot building plots, but he is not deprived of all use of the excess 4,000 square feet. A house on the larger plot has more yard area and there is more room for accessory buildings. The loss of a greater profit to the owner is not an overriding consideration.
*681 However, in the case at bar the ordinance, if applied, would result in a complete sterilization of lots 68 and 69. The highest and best use of lots 66 and 67 is acknowledged by the ordinance to be for business purposes. Lots 68 and 69, zoned for residential purposes, cannot be used in conjunction with this use. Moreover, even if the owner of lots 66 and 67 were to devote them to residential purposes, the location of the two plots in relation to each other is such that one would not complement the other.
In Land Purchasing Corp. of America v. Schlimm, Mr. Justice Hill of this court (N. Y. L. J., Nov. 29,1957, p. 13, col. 5) it was held that two parcels, both in a residence district, which, taken together, formed an “ L ” shaped plot of land, with a common boundary line of only 60 feet, were separate and distinct plots, and, for the purposes of the ordinance, each was held in single and separate ownership, bringing the substandard one within the permitted exception.
To hold differently in the instant case would be to render lots 68 and 69 completely useless and this would result in a taking without compensation.
In Arverne Bay Constr. Co. v. Thatcher (278 N. Y. 222, 232) it was held that: ‘ ‘ An ordinance which permanently so restricts the use of property that it cannot be used for any reasonable purpose goes, it is plain, beyond regulation, and must be recognized as a taking of the property. The only substantial difference, in such case, between restriction and actual taking, is that the restriction leaves the owner subject to the burden of payment of taxation, while outright confiscation would relieve him of that burden.”
Accordingly, the petition is sustained and the respondent Building Inspector will be directed to issue a building permit to the petitioner upon compliance with all pertinent regulations.