544 So.2d 1165 (1989)
CITY OF DeLAND, Appellant/Cross-Appellee,
v.
W.J. LOWE, Appellee/Cross-Appellant.
No. 88-1987.
District Court of Appeal of Florida, Fifth District.
June 15, 1989.
*1166 Astrid de Parry, City Atty. and David J. Russ, former City Atty., DeLand, and Frank C. Wesighan of Dean, Ringers, Morgan & Lawton, Orlando, for appellant/cross-appellee.
Robert A. Merrell, III and C. Allen Watts of Cobb & Cole, Daytona Beach, for appellee/cross-appellant.
COBB, Judge.
City of DeLand appeals from a summary judgment declaring that a lot owned by the appellee, W.J. Lowe, and ostensibly zoned as residential, must be deemed to be commercially zoned in conformity with the zoning of two contiguous lots owned by Lowe in order to avoid "confiscatory and unreasonable" zoning. The court enjoined the City from enforcing the residential zoning classification of the smaller lot. The trial court also determined that Lowe was not estopped by his prior actions to challenge the zoning at issue. Lowe was denied damages and attorney fees pursuant to his section 1983 action[1] filed in state court. The City has appealed, and Lowe has cross-appealed.
The record indicates that Lowe is the owner of three adjacent lots in DeLand, Florida known as Lots 1, 2 and 19 in Block G, Stetson Home Estates, as shown by the survey map introduced in evidence:
*1167 
The three lots were purchased by Lowe in 1981. The two northernmost lots, Lots 1 and 2, are 71 feet wide and 175 feet deep. They were zoned "C-1," which permits low density commercial use and the development of professional offices. There are no minimum lot sizes in C-1 zones, but the regulations do require unobstructed front and rear yards and at least 30 feet between buildings and lot lines. Parking is allowed in the front yards only. The other lot (Lot 19), which runs east and west, is directly behind the commercially zoned lots, but is zoned R-1A (Single Family Dwelling District) *1168 and permits homes, churches, citrus, and golf courses. The R-1A zoning requires minimum frontage of 75 feet and apparently the current code requires that each lot within this zone be at least 8,250 square feet. Lot 19 has a frontage of 54 feet on Elsasser Avenue and it measures approximately 7,670 square feet. The only uses allowed in the R-1A district are the uses specifically designated in the regulations for the district. The district zoning line separates Lots 1 and 2 from Lot 19.
Only months after obtaining the three lots and prior to construction of his commercial building, shown in the above map, Lowe asked the DeLand City Commission to rezone the north 27 feet of Lot 19 from residential to commercial for the purpose of using that area as a parking lot for the offices he proposed to build on the two commercial lots. Lowe's request was denied in November, 1981. The next month Lowe's representatives appeared before the DeLand Board of Adjustment for a variance and building permit so that he could build one part of the building to within three feet of the rear lot line of Lots 1 and 2. In other words, he wanted the rear setback requirement for those lots reduced from 30 feet to 3 feet. According to the City, Lowe or his representatives told the Board that if the variance were granted, he would use the north 27 feet of Lot 19 for compliance with the building setback, and the remaining area of the lot would be preserved as a buffer between the commercial offices and the adjacent residential property to the south. The Board of Adjustment ordered the building inspector to issue a permit for the structure described in the plans and granted the requested variance with the condition that Lot 19 be "used only as a green belt" and that no parking be allowed there. Lowe's agents acknowledged the condition and accepted the variance on Lowe's behalf under these terms.
Five years later in 1986, Lowe again applied for rezoning of Lot 19 to allow parking and for rezoning Lots 1, 2 and 19 as "P-1"  professional offices. When the City denied the request, Lowe filed a section 1983 action under the Civil Rights Act alleging that a regulatory "taking" had occurred because Lot 19 was too small for residential use and that the City had "refused to acknowledge" his right to use the property for parking. He demanded declaratory, injunctive, and monetary relief under the Act.
The City was initially successful in abating the suit because Lowe had not applied for a building permit for Lot 19. Lowe applied for the permit and was denied because: (1) Lot 19 was located in a residential district; and (2) the issuance of the permit would violate the terms of the Board of Adjustment's conditional variance granted to Lowe in 1981. The denial informed Lowe that he had the right to appeal the decision by filing notice with the building inspector and had the right to apply for a variance to erect a home on the lot. Lowe did neither, but filed an amended complaint including allegations concerning the denial of the building permit.
After a second motion to dismiss was denied, the City answered the complaint generally denying the allegations and raising estoppel and failure to exhaust administrative remedies. The trial court entered final summary judgment in favor of Lowe holding: (1) the denial of the building permit was effectively final action precluding the need for an appeal to the Board of Adjustment; (2) a variance would not be possible because this was a self-imposed hardship; (3) Lot 19 would be deemed C-1 Commercial under the City ordinances; (4) the City would be enjoined from applying the residential zoning classification to Lot 19; and (5) Lowe's claim for damages and attorney's fees was denied.
We believe that the City's first point on appeal is dispositive: It was error for the trial court not to dismiss this action without prejudice because Lowe failed or refused to exhaust his administrative remedy of appeal to the Board of Adjustment prior to filing a section 1983 action against the City. See Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); Halifax *1169 Area Council on Alcoholism v. City of Daytona Beach, 385 So.2d 184, 186 (Fla. 5th DCA 1980). The City quotes from DeCarlo v. Town of West Miami, 49 So.2d 596, 597 (Fla. 1950):
The administrative boards usually provided for the consideration and review of zoning problems are made up of local people, having the advantage of full local information as to the reasons behind the various zoning regulations. Their findings, while not conclusive, are indeed helpful in the ultimate determination of the rights of the parties. Moreover, the inequalities of a zoning ordinance, if called to the attention of such local administrative boards, may frequently be adjusted at that level. Such boards should, at least, be given an opportunity to afford such relief, or state their reasons for not doing so.
The trial court found that the City intended denial of the building permit for Lot 19 as "final city action." There is no record support for this finding, and it is directly controverted by the specific notice from the City to Lowe of his right to appeal the denial.
Under the applicable City ordinances, the Board of Adjustment, not the city administration, has final say over zoning decisions, subject only to appeal to a court of competent jurisdiction.
The trial court also excused Lowe from applying for a variance to put a residence on Lot 19 on the ground that such a variance was precluded, as a matter of law, by the fact of Lowe's ownership of adjacent property, Lots 1 and 2, which rendered any hardship in regard to Lot 19 self-imposed. We find that such a determination is one for the Board of Adjustment in the first instance. Moreover, there is no legal authority in Florida to support this determination. None of the cases relied upon by the trial court in regard to this point deals with properties split by a zoning district line. The more persuasive authority holds that contiguous lots separated by a zoning district line should not be considered as legally "adjacent." See Creamer v. Young, 16 Misc.2d 676, 184 N.Y.S.2d 10 (S.Ct. 1959); Christian v. Laufer, 24 A.D.2d 624, 262 N.Y.S.2d 359 (S.Ct. 1965).
The trial court also concluded that, as a matter of law, Lowe's three lots constituted a single "lot" split by a zoning line within the ambit of section 33-3(e), DeLand Code of Ordinances. This section, which governs the determination of zoning lines, provides that "where a district boundary divides a lot, the zone classification of the greater portion shall prevail throughout the lot." In interpreting this provision, the trial court found that Lowe's three lots constituted a single zoning "lot" divided by a zoning district line. Since the larger portion of this "lot" (i.e., Lots 1 and 2) was zoned commercial, so then, ipso facto, the entire parcel, including Lot 19, must be "deemed" to be zoned as commercial.
The trial court's interpretation of the word "lot" in section 33-3(e) is dubious, at best, as a matter of law and logic; more to the point, however, such an interpretation of a zoning regulation is a matter clearly within the province of the Board of Adjustment prior to judicial intervention. The trial court also erred in making determinations in regard to such matters as estoppel, regulatory taking, interpretation of the zoning code, etc. As an administrative agency, the Board of Adjustment should be given the opportunity to interpret its own rules. This serves the purpose of preventing needless litigation and fosters settlement negotiations. It is also consistent with the passage from DeCarlo quoted above. Permitting the Board to hear the case will greatly benefit circuit court and appellate review by creating a solid factual record and serves to narrow and more precisely frame the issues. Accordingly, we reverse the judgment entered by the trial court, and remand for dismissal without prejudice of the plaintiffs' complaint.
REVERSED AND REMANDED.
DAUKSCH and ORFINGER, JJ., concur.
NOTES
[1] See 42 U.S.C. § 1983.