790 So.2d 593 (2001)
CENTRAL FLORIDA INVESTMENTS, INC., etc., et al., Appellants,
v.
ORANGE COUNTY CODE ENFORCEMENT BOARD, et al., Appellees.
No. 5D00-3321.
District Court of Appeal of Florida, Fifth District.
August 3, 2001.
*594 Michael E. Marder and David R. Lenox of Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A., Orlando, for Appellants.
Kimberly A. Ashby of Akerman, Senterfitt & Eidson, P.A., and Alan Lawson, Orange County Attorneys Office, Orlando, for Appellees.
SHARP, W., J.
Central Florida Investments, Inc., Westgate Lakes, Inc. and Westgate Lake Owners' Association, Inc. ("Central Florida") *595 appeal from an order which dismissed their lawsuit against Orange County and the Orange County Code Enforcement Board ("County") for failure to exhaust administrative remedies. On appeal, Central Florida argues there is no need to exhaust administrative remedies because the lawsuit involves constitutional issues and challenges to the County's police power and any further administrative action would be futile. We disagree and affirm.
Central Florida and Westgate are the current owners/developers of a condominium and timeshare resort on Big Sand Lake in Orange County. The Association manages timeshare plans at the resort and controls the recreation and common areas, some of which abut Big Sand Lake.
By way of background, Orange County designated the resort as a planned development district and approved the development plan for the property on behalf of Central Florida's predecessor in 1980. According to Central Florida, its predecessor intended for the resort to include water-related facilities.
In 1984, Central Florida's predecessor filed an application to amend the development plan to allow a boat dock and shelter on Big Sand Lake for the rental of nonpowered boats. In July 1984, the amendment was approved with the exception that motorized water craft with combustible engines could not be used.
In January 1993, Central Florida's predecessor applied for an amendment to the development plan to permit the leasing of jet skis to guests at the resort, to operate a ski school with one ski boat, to operate a ski jump and slalom course, to hold boat ownership meetings, to hold water ski tournaments and to make television commercials and movies using power boats on the lake. The Zoning Development Review Committee recommended approval of this amendment with the condition that a maximum of one motorized boat and eight jet skis be permitted to operate at any one time.
In April 1993, the Planning Department outlined its conditions for approval of the amendment. Several hearings were held to consider the amendment but were continued so that a compromise could be reached with neighboring homeowners' association groups. In the meantime, in June 1993, Central Florida acquired title to the resort pursuant to a foreclosure sale.
In early July, Central Florida reached a compromise with its neighbors and changed the request to allow for the rental of six jet skis and one ski boat. At the July 6, 1993 hearing, Central Florida announced the settlement but the County Commission denied its request for the amendment. The Code Enforcement Board then issued a notice that Central Florida was violating the Orange County Code by using motorized water crafts (boats and jet skis) on the lake.
In August 1993, Central Florida filed a petition for a writ of certiorari, challenging the denial of its request for the amendment. Central Florida also filed this lawsuit alleging it was in doubt as to its rights to use motorized water craft on Big Sand Lake. In the first action, the trial court granted the petition for writ of certiorari and quashed the order denying Central Florida's request for the amendment. The trial court in this lawsuit issued a temporary injunction enjoining the County from any attempt to prohibit the rental of boats and jet skis at the resort.
Despite its successes in the legal arena, Central Florida withdrew its application for the amendment and terminated commercial motorized boat rentals in April 2000. The County then moved to dismiss this lawsuit.
*596 In May 2000, Central Florida filed a six-count second amended complaint. Count one seeks a declaration of Central Florida's legal rights to operate commercial and non-commercial water craft on Big Sand Lake. Count two requests a declaration regarding Central Florida's riparian rights on the lake. Count three seeks a declaration that the County has violated zoning laws by selectively prohibiting Central Florida from operating motorized boats on the lake while not restricting others from doing so. Count four seeks injunctive relief, enjoining the County from attempting to restrict or prohibit Central Florida's right to operate water craft on the lake. Count five is an inverse condemnation action for damages for the confiscation of Central Florida's littoral and riparian rights. Count six is an action for violation of Central Florida's civil rights under section 42 U.S.C. § 1983.
In June 2000, the County filed a supplement to the motion to dismiss, arguing in part that Central Florida failed to exhaust administrative remedies. The trial court found that Central Florida had indeed failed to exhaust administrative remedies by withdrawing the application to amend the development plan to allow motorized boats on the lake. This lawsuit was then dismissed.
As a general rule, parties are required to pursue administrative remedies before resorting to the courts to challenge agency action. City of DeLand v. Lowe, 544 So.2d 1165 (Fla. 5th DCA), rev. denied, 551 So.2d 461 (Fla.1989); City of Gainesville v. Republic Investment Corp., 480 So.2d 1344 (Fla. 1st DCA 1985); Deltona Corp. v. Alexander, 682 F.2d 888 (11th Cir.1982). The exhaustion rule serves a number of policies, including promoting consistency in matters which are within agency discretion and expertise, permitting full development of a technical issue and factual record prior to court review, and avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any errors and possibly moot the need for court action. Deltona Corp.
In De Carlo v. Town of West Miami, 49 So.2d 596 (Fla.1950), the Florida Supreme Court discussed the practicality and necessity of the requirement that administrative remedies be exhausted:
The administrative boards usually provided for the consideration and review of zoning problems are made up of local people, having the advantage of full local information as to the reasons behind the various zoning regulations. Their findings, while not conclusive, are indeed helpful in the ultimate determination of the rights of the parties. Moreover, the inequalities of a zoning ordinance, if called to the attention of such local administrative boards, may frequently be adjusted at that level. Such boards should, at least, be given an opportunity to afford relief, or state their reasons for not doing so.
49 So.2d at 596-597.
On appeal, Central Florida argues that the doctrine of exhaustion of administrative remedies does not apply here because there is no pending administrative proceeding. Central Florida characterizes the situation as one in which the County has already declared that Central Florida has "no riparian rights whatsoever" on Big Sand Lake and plans to enforce that determination.
Contrary to Central Florida's assertion, there is no statement or declaration by the County that Central Florida has no riparian rights on Big Sand Lake.[1] *597 Riparian rights consist of rights of ingress, egress, boating, bathing and fishing. See Bonifay v. Garner, 445 So.2d 597 (Fla. 1st DCA 1984). The only issue here is Central Florida's use of motorized boats and jet skis on the lake.
Since Central Florida withdrew its request for the amendment, the County's reasoning and factual determination are not before us. The County apparently claims that Central Florida's predecessor agreed to a restriction on motorized water craft in exchange for the zoning to allow the timeshare units. Central Florida disputes there was any agreement or waiver. This dispute clearly shows the need for Cental Florida to exhaust its administrative remedies so that a factual record can be developed prior to court review.
Central Florida, however, argues that its lawsuit involves constitutional claims which cannot be adjudicated by the County. See, e.g. Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695 (Fla.1978) (administrative hearing officer lacks jurisdiction to consider constitutional issues).
While riparian rights exist in Florida as a matter of constitutional right and property law, see Feller v. Eau Gallie Yacht Basin, Inc., 397 So.2d 1155 (Fla. 5th DCA 1981), even constitutional rights may be regulated. See, e.g., Intracoastal North Condominium Ass'n, Inc. v. Palm Beach County, 698 So.2d 384 (Fla. 4th DCA), rev. denied, 703 So.2d 476 (Fla.1997) (condominium association's riparian right of access was subservient to the superior right of the public to safe navigation on Intracoastal waterway). The protection of environmentally sensitive areas and the prevention of pollution through zoning are legitimate concerns within the police power of the County. Lee County v. Morales, 557 So.2d 652 (Fla. 2d DCA), rev. denied, 564 So.2d 1086 (Fla.1990).
A landowner may make a general attack on the validity of an ordinance without exhausting administrative remedies. However, if the ordinance is alleged to be unconstitutional only as applied to a particular property, the landowner must apply for a variance or exception before the party can seek judicial review. Lee County v. Morales. Here Central Florida is challenging actions and policies of the County specific to its property and thus is required to exhaust administrative remedies. See Lee County v. Morales (property owners were required to apply for variance before challenging constitutionality of rezoning decision as applied to their property); City of Gainesville v. Republic Investment Corp., 480 So.2d 1344 (Fla. 1st DCA 1985) (developer was required to exhaust administrative remedies where no general attack was made on the validity of the ordinances under which the city purported to act; rather the developer was challenging certain actions taken by the city pursuant to those ordinances). See also City of DeLand v. Lowe, 544 So.2d 1165 (Fla. 5th DCA), rev. denied, 551 So.2d 461 (Fla.1989) (property owner was required to exhaust his administrative remedy of appeal to the board of adjustment prior to filing a civil rights action against the city based on the refusal to rezone his property from residential to commercial).
Finally, Central Florida argues that any further administrative action on its part will be futile and that its request ultimately will be denied. See, e.g., Monroe County v. Gonzalez, 593 So.2d 1143 (Fla. 3d DCA 1992) (property owner not required to exhaust administrative remedies prior to going to court to seek relief *598 from confiscatory regulation because such effort would be futile). While comments from the former County Chairman were unfavorable to Central Florida, the County has a new chairman. In any case, the County chairperson does not speak or act for the County. Central Florida may obtain its amendment or permission to use motorized water craft on the lake from the County and it should be required to first seek this avenue of relief from the County.
Since administrative action may render this controversy moot, the trial court was correct in dismissing the action. See Fehlhaber Corp. v. Village of Tequesta, 696 So.2d 880 (Fla. 4th DCA 1997) (plaintiff failed to exhaust its administrative remedies and thus merits of zoning controversy should not have been addressed by trial court where plaintiff did not follow the procedure set forth in Village code to challenge the building officer's decision before filing lawsuit); City of DeLand v. Lowe, 544 So.2d 1165 (Fla. 5th DCA), rev. denied, 551 So.2d 461 (Fla.1989) (landowner was required to exhaust his administrative remedy of appeal to city board of adjustment prior to filing civil rights action; permitting the board to hear the case will greatly benefit circuit court and appellate review by creating a solid factual record and serves to narrow and more precisely frame the issues); City of Gainesville v. Republic Investment Corp., 480 So.2d 1344 (Fla. 1st DCA 1985) (court lacked jurisdiction over declaratory judgment action brought by developer against city regarding development plans where developer failed to exhaust administrative remedies).
AFFIRMED.
THOMPSON, C.J., and HARRIS, J., concur.
NOTES
[1] While the term "riparian" is often used to describe rights incident to ownership of property abutting a sea, lake or pond, technically this is incorrect. Such lands are properly termed littoral. Lake Conway Shores Home-owners. Ass'n, Inc. v. Driscoll, 476 So.2d 1306 (Fla. 5th DCA 1985).