842 So.2d 160 (2003)
GALAXY FIREWORKS, INC., Appellant,
v.
CITY OF ORLANDO, Florida, Appellee.
No. 5D02-822.
District Court of Appeal of Florida, Fifth District.
February 28, 2003.
Rehearing Denied April 15, 2003.
*162 John W. MacKay of John W. MacKay, P.A., Tampa, and Steven G. Mason of Law Offices of Steven G. Mason, Orlando, for Appellant.
W. Scott Gabrielson, City Attorney, City of Orlando, Orlando, for Appellee.
SHARP, W., J.
Galaxy Fireworks, Inc. appeals from a final summary judgment rendered in favor of the City of Orlando. On June 21, 2001, Galaxy filed a lawsuit against the City seeking a temporary and permanent injunction to prevent the City from "interfering" with its business by enforcing and seeking to enforce the City Fire Code,[1] regarding Galaxy's proposed fireworks store within the City limits. The trial court denied Galaxy's request for an injunction but allowed Galaxy to amend its complaint to challenge the lawfulness of the Fire Code. Galaxy challenged the Fire Code for three reasons. First, that it is a land development regulation enacted without following the proper procedure. Second, that the City unlawfully delegated legislative authority to the National Fire Protection Association by adopting the Association's codes and standards as they are amended from time to time. And, third, that the Fire Code lacks sufficient, precise and objective criteria, making its application to Galaxy's store arbitrary and capricious. We affirm.
The City moved for summary judgment, arguing there was no merit to Galaxy's constitutional invalidity claims as to the City's Fire Code. In support of its motion, the City submitted an affidavit executed by the its Fire Marshal, Machen. The affidavit was not disputed by Galaxy. The affidavit established that Galaxy approached the City in June of 2001 about its plans to open a retail store in a downtown shopping center to sell fireworks to consumers. The proposal raised new fire and safety issues for the City because there were no other fireworks stores in the City and such enterprises can cause devastating damage.[2]
Machen required Galaxy to provide her with three items of information in order to evaluate the fire and safety issues presented by the store: 1) a determination by a certified professional that the sprinkler systems were adequate for the products to be contained in the store; 2) a list of the products to be sold and the Material Safety Data Sheet (MSDS)[3] for each product; and 3) the quantity of fireworks in pounds, which would be contained in the store.
*163 Galaxy provided Machen with a list of 505 products it intended to sell at the store. However, Galaxy did not supply the other information requested. By letter dated June 20, 2001, Machen reminded Galaxy not to stock the store with fireworks until the store was approved. On or about June 20, 2001, without having complied with the Fire Marshal's request, Galaxy stocked the store with fireworks and opened it without City approval.
On July 9, 2001, Machen was notified by Galaxy's contractor that the sprinkler system did not meet the City's Fire Code and upgrades were needed. On October 30, 2001, Galaxy gave Machen a handwritten MSDS and a list of products and quantities which would be contained in the store. More than 16,000 pounds of fireworks were contemplated.
On December 17, 2001, Machen approved the opening of the store provided certain conditions were met. Galaxy was notified that if it disagreed with Machen's interpretation of the Code, it had the right to appeal to the Building and Fire Codes Board of Appeal. Further, if Galaxy was dissatisfied with the Board's decision, it could appeal to the City Council. Galaxy has not sought administrative review of Machen's decisions by pursuing any administrative remedies under the Code. Galaxy made no attempt to meet the Fire Marshal's conditions and brought this litigation instead.
The first issue to be resolved in this case is whether Galaxy was under an obligation to exhaust its administrative remedies rather than seek relief in the circuit court. As a general rule, parties must pursue administrative remedies before resorting to the courts to challenge agency action. Central Florida Investments, Inc. v. Orange County Code Enforcement Board, 790 So.2d 593 (Fla. 5th DCA 2001). This rule serves a number of good judicial policies. It permits full development of a factual record and technical issues and avoids unnecessary judicial decisions by allowing the agency to correct any errors and possibly moot the need for court action. It also allows the agency to exercise its discretion and expertise initially in an area of governance designed for its operation and administration.
It is not clear from this record that pursuit of Galaxy's administrative remedies would have proven to be futile. Galaxy admitted it did not provide all of the information requested by Machen specifically concerning certification of the sprinkler system and the MSDS information. It also admitted it had opened the store in June without the City's approval.
Here Galaxy only gave the Fire Marshal and officials two weeks to inspect and adjudge safe for operation a 5,000 square foot store containing 16,000 pounds of fireworks. Galaxy cannot legitimately claim it was inevitable the City would not approve the store when Galaxy failed to comply with the Fire Marshal's request for basic information needed to evaluate the fire and safety hazards presented by storage of this amount of dangerous, explosive material. *164 Thus, we leave standing and refuse to review all of the Fire Marshal's specific requirements and requests for information made to Galaxy, pursuant to the Fire Code, because Galaxy failed to exhaust its administrative remedies.
However, we agree with Galaxy that it is not required to exhaust its administrative remedies concerning its allegations that the City's Fire Code is void ab initio. See State ex rel. Florida Dry Cleaning and Laundry Board v. Atkinson, 136 Fla. 528, 188 So. 834 (1938); City of Miami Beach v. Perell, 52 So.2d 906 (Fla. 1951); Florida Public Employees Council 79, AFSCME v. Department of Children and Families, 745 So.2d 487 (Fla. 1st DCA 1999); Mann v. City of Oakland Park, 581 So.2d 986 (Fla. 4th DCA 1991). The Board and/or City Council lack jurisdiction to declare the Fire Code void as improperly adopted, or that it unconstitutionally delegates legislative authority to the NFPA. Thus we turn to those issues as determinative of this appeal.
First, Galaxy argues the City's Fire Code is a land development regulation and as such it was improperly adopted because it was not reviewed prior to adoption by a local planning agency. In 1985, the Legislature passed the Local Government Comprehensive Planning and Land Development Regulation Act, Chapter 163, part II, which mandates local governments adopt comprehensive plans to guide and control future land development. Home Builders and Contractors Ass'n of Brevard, Inc. v. Department of Community Affairs, 585 So.2d 965 (Fla. 1st DCA 1991). The statute provides that after a comprehensive plan has been adopted, no land development regulation shall be adopted by the governing body until it has been referred to a local planning agency or to a separate land development regulation commission for review. § 163.3194(2), Fla. Stat. (2002).
This argument turns on what is meant by a "land development regulation." The statute contains two definitions:
(2)(b) `Land development regulation' means an ordinance enacted by a local governing body for the regulation of any aspect of development, including a subdivision, building construction, landscaping, tree protection, or sign regulation or any other regulation concerning the development of land. This term shall include a general zoning code, but shall not include a zoning map, an action which results in zoning or rezoning of land, or any building construction standard adopted pursuant to and in compliance with the provisions of chapter 553.
§ 163.3213(2)(b), Fla. Stat.
This particular provision is applicable to administrative review of land development regulations.
(23) `Land development regulations' means ordinances enacted by governing bodies for the regulation of any aspect of development and includes any local government zoning, rezoning, subdivision, building construction, or sign regulations or any other regulations controlling the development of land, except that this definition shall not apply in s. 163.3213.
§ 163.3164(23), Fla. Stat.
In addition, this statute provides that "development" has the meaning given it in section 380.04. § 163.3164(6), Fla. Stat. That provision defines development as "the carrying out of any building activity or mining operation, the making of any material change in the use or appearance of any structure or land, or the dividing of land into three or more parcels."
In support of its claim that the Fire Code is a land development regulation, Galaxy relies on an affidavit from *165 McLaughlin, a land use planning and local government consultant. He concludes the Fire Code is a land development regulation because it governs numerous aspects of building construction, including the ability to stop construction, the use of buildings, physical construction requirements such as fire walls, fire stops and fire-rated partitions and doors, egress requirements from buildings, construction materials, the installation of smoke detectors and in some cases, requirements for installation of sprinkler systems.
We disagree. The Fire Code does not regulate what can be built on land, in the sense of land development, but rather it mandates requirements for the structure of a building, if used for certain purposes, in order to safeguard the public from fire hazards. In this case, the Fire Code did not prevent the construction of this particular store in the shopping center nor would it have prevented the use of that store for conventional purposes. The conduct proposed of selling large amounts of fireworks in the store is what gave impetus to the application of the Fire Code in this case. And the rationale for its application was not to control the development of land for aesthetic or land use purposes, but rather for public safety reasons.
In 3299 N. Federal Highway, Inc. v. Board of County Commissioners of Broward County, 646 So.2d 215 (Fla. 4th DCA 1994), rev. dismissed, 699 So.2d 690 (Fla. 1997), nightclub owners and dancers appealed from the denial of their request to enjoin Broward County from enforcing its newly adopted Adult Entertainment Code. The Code regulated conduct in the nightclub by restricting the extent of customers' physical contact and proximity to the dancers, and it also required that the nightclub meet structural requirements, for example, partitions, width of doorways, and distance between seats and the stage. The court rejected the argument advanced by the owners and dancers that the ordinance was a zoning law or land use ordinance which was void because it was not adopted with the notice and public hearing requirements for such laws. It said:
The legislative staff and the courts have looked to municipal ordinance cases for guidance; and the courts have generally held that municipal ordinances which substantially impair the use of land are invalid if they were not enacted with the formality required under section 166.041(3)(c) [the statute which governs the enactment of municipal zoning ordinances]. In City of Sanibel [v. Buntrock, 409 So.2d 1073 (Fla. 2d DCA 1981), rev. denied, 417 So.2d 328 (Fla. 1982)] at 1075, the second district explained:
If an ordinance substantially affects land use, it must be enacted under the procedures which govern zoning and rezoning (Emphasis supplied). These municipal ordinance cases should be considered in construing a county ordinance; and they indicate that the effect on land use must be something more than merely incidental for the ordinance to be classified as one which `affects the use of land.'...
On the other hand, notice and hearing requirements are not usually imposed on changes to municipal building and construction codes. Fountain [v. City of Jacksonville, 447 So.2d 353 (Fla. 1st DCA 1984)] at 355, (holding that the zoning ordinance had only an incidental effect on the building code and so was subject to the requirements). Nor are they required for impact fee ordinances which have the primary purpose of capital expansion rather than land use regulation....
We conclude that the structural requirements of the Broward County *166 ordinance do not substantially affect the use of land. They are very similar to the type of changes that might be imposed on an existing business due to an amendment of the fire safety code or building code (width of doorways and aisles, removal or construction of partitions, prohibition against certain types of upholstery and floor covering materials). According to Fountain, these changes would not be subject to strict enactment requirements if they were part of a building or construction code.
Further, the purpose behind the ordinance is clearly to regulate conduct which the county commission has found to pose a danger to public health and safety, even though this purpose is accomplished in part by requiring businesses to make some structural changes. As in the Baywood Construction case, the primary goal was not to regulate land use and any incidental effect that the ordinance may have on appellants' use of their land is not a "substantial restriction" sufficient to trigger the notice and hearing requirements. (footnotes omitted; emphasis in original).
646 So.2d at 223-224.
We think this case is controlling precedent. The purpose of the City's Fire Code is to prevent fire and explosion through the regulation of conditions which could cause fire or explosion. Orlando, Fl.Code § 24.01(b). While the Code does affect building structures in a limited sense by, for example in this case, requiring fire extinguishing systems and exit markings on doorways, its effect is incidental. Further, the purpose of the Code is not to regulate land use, but to insure public safety and welfare. We conclude its adoption is not subject to review by a local planning agency and thus it was validly adopted by the City.
Second, Galaxy argues that one provision of the Code constitutes an improper legislative delegation to the National Fire Protection Association and thus invalidates the whole Code. Section 24.22 of the Fire Code provides:
The following NFPA codes and standards as they may be from time to time amended, are hereby adopted as part of, and incorporated by reference in, Chapters 24 of the Code of the City of Orlando.... (emphasis added).
The National Fire Protection Association (NFPA) is an international non-profit organization founded in 1896. It serves as the world's leading advocate of fire prevention, is an authoritative source on public safety, and has 300 safety codes in standards in use around the world.[4] It also reviews and updates its codes from time to time.
Florida law has adopted numerous NFPA codes. For example, section 633.025(3), Florida Statutes, provides that the most current edition of NFPA 101, Life Safety Code, adopted by the state Fire Marshal, is deemed to be adopted by each city and county as part of its minimum fire safety code. See also Davis v. Ins. Commissioner and Treasurer, 445 So.2d 630 (Fla. 1st DCA), rev. denied, 451 So.2d 847 (Fla.1984) (Florida Administrative Code adopts by reference NFPA's standards of visual acuity for certifying professional firefighters). In her deposition, Machen admitted the City automatically *167 adopts NFPA's codes as soon as they are published.
The adoption of future code provisions may constitute an unlawful delegation of powers by a legislative body, here the City Council. See Fla. Ind. Comm. v. State ex rel. Orange State Oil Co., 155 Fla. 772, 21 So.2d 599 (1945) (legislature may approve and adopt provisions of federal statutes or rules made by a federal administrative body which exist and are in effect at the time the Legislature acts but it would be an unconstitutional delegation of power for the Legislature to adopt in advance any federal act or the ruling of any federal administrative body that Congress or such administrative body might see fit to adopt in the future); Blitch v. City of Ocala, 142 Fla. 612, 195 So. 406 (1940) (Ocala ordinance authorizing city manager to issue building permits in accordance with test specifications of National Board of Fire Underwriters was not invalid when construed to mean those specifications in effect at the time the ordinance was enacted; if ordinance were constructed to include future specifications or any changes adopted by the National Board of Fire Underwriters, the ordinance would be invalid); State, Dept. of Children and Family Services v. L.G., 801 So.2d 1047 (Fla. 1st DCA 2001) (Legislature could not validly enact or adopt prospective regulations yet to be promulgated by the Association of Administrators of the Interstate Compact on the Placement of Children at the time the Legislature adopted the Compact).
However, we decline to address this issue because Galaxy has not established that any of the later adopted standards of the NFPA are involved in the actions of the Fire Marshall or the regulations sought to be imposed on Galaxy. As noted above, the problem in this case was that the Fire Marshall could not evaluate Galaxy's proposed business operations in the store because she was not furnished with all the information she requested. See Grady v. Department of Professional Regulation, Board of Cosmetology, 402 So.2d 438 (Fla. 3d DCA), appeal dismissed, 411 So.2d 382 (Fla.1981) (where state board of cosmetology neither tested appellant nor denied him a license, his constitutional challenges to the board's licensing and testing procedures were not ripe for review). See also Central Florida Investments, Inc. v. Orange County Code Enforcement Board, 790 So.2d 593 (Fla. 5th DCA 2001)(affirming dismissal of lawsuit against county and code enforcement board, thus requiring plaintiffs to pursue administrative remedies which may render controversy moot). Further, the provision adopting future amendments of NFPA codes and standards could simply be severed from the rest of the ordinance, were it appropriate. See, e.g., Brevard County v. Bagwell, 388 So.2d 645 (Fla. 5th DCA 1980) (invalid paragraph of county firearm licensing ordinance which allowed county commissioners to consider any criteria they desired for each license applicant could be severed from the ordinance and the remaining provisions sustained).
Third, Galaxy attacks the Fire Code on the ground that it lacks precise objective criteria, and that this will lead to its arbitrary and capricious application to Galaxy. On appeal, Galaxy has failed to point out which Code provisions are objectionable or what acts by the Fire Marshal were arbitrary and capricious. It does not contend here that it did not understand what information the Fire Marshal had requested (the MSDA data and the sprinkler system certification). A brief look at the Code discloses a great deal of precise and objective criteria. In any event, this appears to be an almost insurmountable allegation to sustain in an effort to strike down the Code en toto. If Galaxy seeks to *168 challenge a particular provision in the Code as unconstitutionally vague, as applied to its business, or the Fire Marshal's action interpreting or applying the Code to its business as arbitrary, this kind of claim should be first raised in an administrative proceeding. See State Dept. of Environmental Protection v. PZ Const. Co., Inc., 633 So.2d 76 (Fla. 3d DCA 1994); Lee County v. Morales, 557 So.2d 652 (Fla. 2d DCA), rev. denied, 564 So.2d 1086 (Fla. 1990); Central Florida Investments, Inc.[5]
Affirmed.
GRIFFIN and ORFINGER, JJ., concur.
NOTES
[1] Orlando, Fl.Code Ch. 24.
[2] Machen noted that in 2002, 300 people were killed in Lima, Peru when fireworks were ignited in an alleyway where street vendors were selling fireworks, and the resulting fire destroyed four city blocks. In May 2000, an explosion at a fireworks warehouse in the Netherlands killed more than fifteen people and injured another 300. In December 1998, an explosion destroyed a farmhouse in Michigan being used as a fireworks factory, killing seven people. In July 1996, a man set off firecrackers in a fireworks store in Ohio, and the resulting fire and explosion killed nine people and injured eleven.
[3] A Material Safety Data Sheet (MSDS) contains basic information needed to insure the safety and health of the user of a hazardous material at all stages of its manufacture, storage, use and disposal. This information includes hazard ratings, such as the NFPA ratings; name and address of the material's manufacturer or importer; identity by common name and chemical abstract number; physical and chemical characteristics such the material's appearance, odor and melting point; fire and explosion data, such as the material's flash-point, explosion hazards and recommended fire extinguishing media; physical hazards, such as the material's stability, incompatible material information and hazardous decomposition products; health hazards, such as inhalation and ingestion hazards and basic first aid information; special precautions and spill or leak procedures; special protection information, such as personal protective equipment recommendations.

MSDSs are designed to provide both workers and emergency personnel with the proper procedures for handling or working with a particular substance. MSDSs provide information on what conditions to avoid when working with the material and information for storage and disposal of the material. They also show what protective equipment is required when using the material and specifies firefighting procedures for the material. See Development of Material Safety Data Sheets, http://www.phys.ksu.edu/area/jrm/Safety/ kaplan.html; Material Safety Data Sheets, http://www.webworldinc.com/wes-con/ msd.htm; The MSDS FAQ: Introduction, http://www.ilpi.com/msds/faq/parta.html.
[4] NFPA On Line:

http://www.nfpa.org/Ho me/AboutNFPA/ NFPAOverview/NFPAOverview.asp.
[5] The cases relied on by Galaxy do not involve fire codes. Miami-Dade County v. Omnipoint Holdings, Inc., 811 So.2d 767 (Fla. 3d DCA 2000), rev. granted, Case No. SC02-815, 835 So.2d 268 (Fla. Dec.20, 2002), involved a provision in a county zoning code for special exceptions and unusual uses. Lady J. Lingerie, Inc. v. City of Jacksonville, 176 F.3d 1358 (11th Cir.1999), cert. denied, 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000), involved provisions of a city ordinance which subjected adult businesses to various licensing, health and safety, and zoning regulations.