397 So.2d 362 (1981)
LEON COUNTY, Appellant,
v.
James A. SMITH and Beulah Smith, His Wife, Appellees.
No. VV-225.
District Court of Appeal of Florida, First District.
April 10, 1981.
Rehearing Denied May 11, 1981.
F.E. Steinmeyer, III, County Atty., and O. Earl Black, Jr., Asst. County Atty., for appellant.
*363 Brian S. Duffy and J. Lawrence Johnston of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for appellees.
Walter B. Smith of Green & Fonvielle, P.A., amicus curiae.
PER CURIAM.
Leon County appeals a final judgment which finds it has taken an easement across the Smiths' property and is engaged in a continuing trespass across that property. We affirm.
Appellees James A. and Beulah Smith are the owners of approximately 16 acres of land in Leon County, situated on Raymond Diehl Road and bounded on the north by Unit 5 of Killearn Estates. Prior to the development of Killearn Estates, the area was primarily wooded with vegatative cover and most surface water after rainfall flowed into "bottoms" and percolated into the ground. There was a gentle slope in a southerly direction which caused some surface water to flow towards the Smiths' land, but a ridge along the northern boundary prevented most of the water from flowing onto the Smiths' land. Only during the most severe storms would water spill over onto the Smiths' land and the amounts, volumes and concentrations were so dispersed and infrequent as to be inconsequential.
When Killearn Estates Inc. began development of this area it retained Broward Davis and Associates, Inc. to prepare a plat. This proposed plat contained a drainage system designed to collect surface water and transport it east or west to a central ditch and then southerly through the ditch to the Smiths' property. The outfall point for this water was along the northern boundary line of the Smiths' property and no provisions were made for transporting the water across their land. In 1968 the plat was submitted to and approved by Leon County and Killearn Estates, Inc. proceeded to construct the roads, streets and drainage systems in accordance with the plan. In 1970 defendant accepted ownership of the drainage system and responsibility for its maintenance and control. About this time plaintiffs began sustaining some run off which caused minimal damage to their property.
As the residential lots in Unit 5 were sold and houses with accompanying hard surfaces built, water that previously would have percolated into the ground was diverted into the drainage system and as development continued, so did the damage to plaintiff's property. Drainage systems of other lands in which Leon County owned, controlled and maintained drainage easements were directly connected to the Unit 5 drainage system after 1970 and Leon County enclosed this drainage easement, placing a pipe into the ditch, which increased the velocity of the water flow.
Eventually, this drainage carved ditches four to six feet deep into the Smiths' land; water continued flowing from Killearn Estates for days after the rain stopped and the area in and around the ditches remained a muddy ooze. By late 1974 or early 1975 the situation had deteriorated to the point that the area affected by the flooding was rendered useless and plaintiffs were permanently deprived of all beneficial use and enjoyment of the property.
The Smiths initially filed for injunctive relief, later amending the complaint to allege inverse condemnation. Leon County defended on the grounds that approval of the plat was a discretionary act for which the county was immune and the action for inverse condemnation was barred by the statute of limitations. The court ruled that defendant failed to prove its affirmative defense of the statute of limitations and that in late 1974 and early 1975 the increased amount, rate, velocity and concentration of run off which was due to the installation of a pipe in the drainage easement constituted a taking by Leon County of a portion of this property and a continuing trespass on that property.
We do not here decide whether the county's approval of the plat would subject it to liability because the county's actions exceeded this. The doctrine of sovereign immunity does not allow a governmental *364 agency to take the land of a private citizen without giving that citizen recourse through eminent domain or inverse condemnation proceedings. Article X, Section 6, Florida Constitution. State Road Dept. v. Harvey, 142 So.2d 773 (Fla. 2d DCA 1962).
The trial judge correctly found that a taking resulted from flooding which rendered the land useless and permanently deprived plaintiffs of all beneficial enjoyment thereof. Kendry v. State Road Dept., 213 So.2d 23 (Fla. 4th DCA 1968); Elliott v. Hernando County, 281 So.2d 395 (Fla. 2d DCA 1973); compare Department of Transportation v. Burnette, 384 So.2d 916 (Fla. 1st DCA 1980). The finding that this damage was not permanent until 1974 is supported by the evidence, see Petroleum Products Corp. v. Clark, 248 So.2d 196 (Fla. 4th DCA 1971) and appellant has not demonstrated that the cause of action accrued earlier so as to give rise to the statute of limitations. Town of Miami Springs v. Lawrence, 102 So.2d 143 (Fla. 1958).
Appellant's argument that the Smiths' property was the natural drainage basin for Killearn Estates must fail. The trial judge found that this argument was not supported by the testimony and we find no basis in the record for reversing this finding.
Accordingly, the judgment below is AFFIRMED.
MILLS, C.J., and ROBERT P. SMITH and WENTWORTH, JJ., concur.