Fred and Bonita BENSCH,
et al., Plaintiffs,

v.

METROPOLITAN DADE COUNTY,
South Florida Water Management
District, et al., Defendants.

No. 90–0252–CIV.

United States District Court,
S.D. Florida.

Dec. 16, 1996.

Mark V. Silverio, Silverio & Hall, Miami, FL, for plaintiffs.

H. Adams Weaver, Jones, Foster, Johnston & Stubss, West Palm Beach, FL, Ruth Clements, Office of Counsel, South Florida Water Mgmt. Dist., West Palm Beach, FL, Joni Armstrong Coffey, Asst. County Attorney, Miami, FL, for defendants.

*ORDER GRANTING MOTION TO DISMISS AND*
*DENYING MOTION TO DROP PARTIES*

HOEVELER, Senior District Judge.

THIS CAUSE comes before the Court on Defendant South Florida Water Management District's (SFWMD's) Motion to Dismiss Counts II and III (Docket # 139), filed March 16, 1995; and Defendant SFWMD's Motion to Drop Parties (Docket # 141), filed March 16, 1995. The Court heard argument on these motions on April 15, 1996. These motions address Plaintiff's Fourth Amended Complaint, which was filed on January 17, 1995, subsequent to this Court's Order of April 11, 1994, which granted Defendant SFWMD's Motion to Dismiss Third Amended Complaint.[1]

Plaintiffs' Fourth Amended Complaint contains eight counts: Count I (taking of property by flooding without just compensation), Count II (taking of flowage easement without just compensation), Count III (continuing trespass as result of flooding), Count IV (taking property by ordinances without compen-

---

1. The Court's Order provided Plaintiffs "one last opportunity to amend their complaint". *Order,* p. 4.

sation), Count V (denial of substantive due process), Count VI (denial of equal protection), Count VII (denial of procedural due process), Count VIII (violation of 42 U.S.C. § 1983).[2] Counts I–III are based on the Defendant SFWMD's construction in 1990 and subsequent operation of the G–211 water control structure. Counts IV–VIII are based on the following alleged acts of the other (non–SFWMD) Defendants: enactment and enforcement of ordinances (which, e.g., resulted in a downzoning of Plaintiffs' property such that residences would be permitted only on parcels of forty acres or larger, i.e., the one unit per forty acres rule)[3] and "administrative and quasi-judicial decisions adversely affecting plaintiffs' property rights without according adequate notice or an opportunity to be heard." *Fourth Amended Complaint,* ¶ 98.

## MOTION TO DISMISS

### 1. Arguments of the parties

Defendant SFWMD seeks dismissal of Counts II and III (both of which are presented as alternative claims to those contained in Count I). Defendant SFWMD argues that Count II, which alleges the taking of a flowage easement in violation of the Fifth Amendment to the U.S. Constitution[4], is premature because Plaintiffs have failed to exhaust their state remedies on this issue, as required by *Williamson County Regional*

*Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *see also, Reahard v. Lee County,* 30 F.3d 1412 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1693, 131 L.Ed.2d 557 (1995). Defendant SFWMD also notes that this is the first time such claim has been presented during the more than ten years of litigation between these parties,[5] and asserts the doctrine of *res judicata* as additional grounds for dismissal. Defendant SFWMD argues that Count III, which alleges a continuing trespass due to flooding, must be dismissed because the Eleventh Amendment to the United States Constitution bars actions against states (or their agencies) in federal court based on state law absent an explicit waiver. As no such waiver has been made, Defendant SFWMD argues that Count III must fail.

Plaintiffs urge this Court to permit Count II (taking of a flowage easement) to proceed against Defendant SFWMD because "state court procedures would be inadequate in that it is clear that they would not result in compensation for plaintiffs, ... [r]esort to the Florida courts for compensation for this type of taking would be a futile act ..." *Plaintiffs' Reply [sic] Memorandum to Motion to Dismiss,* filed June 2, 1995, p. 2–3. As an alternative, Plaintiffs ask the Court to exercise "pendent" jurisdiction over this

---

**2.** The Court's Order of March 25, 1996, granted Defendant SFWMD's Motion to Strike all state law claims in Plaintiffs' Fourth Amended Complaint. Specifically, the state law claims contained in the following paragraphs were stricken: Count I (paragraphs 2, 3, and 76), Count II (paragraph 79), Count IV (paragraph 89), Count V (paragraph 94), Count VI (paragraph 96), and Count VII (paragraph 99).

**3.** Although analysis of Plaintiffs' attack on the ordinances is irrelevant to the pending Motion to Dismiss, the Court observes for the record that, despite statements to the contrary in Counts IV–VI, the thrust of Plaintiffs' challenge appears to be directed to the regulations *as applied.* Plaintiffs assert that "certain property owners, other than the plaintiffs, were exempted and deleted from the [Management Plan and Critical Area] Plan [which ultimately provided for the downzoning of which Plaintiffs complain] without any legal cause or justification." Plaintiffs note that their similar requests and demands to delete their property from the downzoning provisions

were rejected, ¶ 71 of the Fourth Amended Complaint. Plaintiffs have attempted to raise broad facial challenges to the subject ordinances as well.

**4.** As noted in a footnote in the recent decision of the Eleventh Circuit Court of Appeals, in *Corn v. City of Lauderdale Lakes,* 95 F.3d 1066 (11th Cir.1996), this claim is technically brought under the Fifth and Fourteenth Amendments to the U.S. Constitution but will, for simplicity, be referred to as a claim under the Fifth Amendment. (The Fifth Amendment was made applicable to the states by the Fourteenth Amendment, *Chicago, B. & Q.R. Co. v. City of Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897).)

**5.** An earlier federal case, Case No. 84–2216–CV–Hoeveler, was dismissed in 1986 for ripeness problems. The parties have been involved in state litigation for several years, *see Bensch v. Metropolitan Dade County,* 541 So.2d 1329 (Fla. 3d DCA 1989), *review denied,* 549 So.2d 1013 (Fla.1989).

claim. The Court views this as a request under 28 U.S.C. § 1367(a), which provides, in any civil action in which the district court has original jurisdiction, for supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution".

## 2. Analysis

A motion to dismiss on the basis of the pleadings should rarely be granted. *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969)[6]. Dismissal is appropriate, however, when Plaintiffs have failed to sufficiently allege a basis for this Court's jurisdiction. The Court will address the arguments for dismissal as to each Count.

### a. Count II

 Count II presents the question of whether Defendant SFWMD's actions constitute a **taking** of a **flowage easement.** Plaintiffs allege that such taking is evidenced by the "increased groundwater levels and frequent and prolonged flooding", and note that "such increased groundwater levels are permanent and flooding will inevitably recur", *Fourth Amended Complaint*, ¶ 78. Essentially, Plaintiffs argue that Defendant's actions in the construction and operation of the G–211 water control structure have resulted in a complete taking of an easement— an easement in which Plaintiffs have a recognizable property interest. Plaintiffs argue that they are entitled to compensation as a consequence of the taking of that easement. Although Plaintiffs have included several demands for relief, see pages 47–48 of Plaintiffs' Fourth Amended Complaint, the only relief applicable against Defendant SFWMD for the violation alleged in Count II is "just compensation".[7] This claim is properly characterized as one for "inverse condemnation".

The Supreme Court has provided the following definition of "inverse condemnation":

> "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency."

*United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980), *quoting* D. Hagman, Urban Planning and Land Development Control Law 328 (1971). The taking clause of the Fifth Amendment to the United States Constitution permits such actions as it prohibits the taking of private property for public use without just compensation. The Supreme Court has permitted inverse condemnation actions for property interests other than those in fee simple. For example, in *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), the Court recognized an interest in the ability to restrict access to one's property. *See also, Corn v. City of Lauderdale Lakes*, 95 F.3d 1066 (11th Cir.1996) (discussing various property rights protected by the Fifth Amendment).

Although the concept of inverse condemnation is deceptively simple in its description, the case law which has developed in this area (which could be generally described as a branch of "takings" law) is unfortunately muddled. *See, e.g., Reahard v. Lee County*, 30 F.3d at 1417, n. 12 (noting potential tension between Eleventh Circuit precedent and Supreme Court decisions). In general, federal courts have recognized a ripeness requirement regarding the pursuit of an inverse condemnation action, in accordance with the case or controversy aspect of our jurisdiction under Article III of the United States Constitution. An aggrieved plaintiff

---

**6.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**7.** Plaintiffs' request for injunctive relief mentions "defendants" without specificity, and seeks an

injunction prohibiting, *inter alia*, "further violations of the plaintiffs' civil rights", ¶ J, p. 47, *Fourth Amended Complaint*, but the language of Count II is limited to a "taking" claim under the Fifth Amendment and, as such, compensation is the sole remedy available under Count II as against Defendant SFWMD.

is directed to initially approach the regulatory body whose actions have affected plaintiff's property interest. Evidence of this approach, or its attempt, informs a court's later determination as to whether the regulating body's action is final (or complete)—a requirement for the initiation of an inverse condemnation action in federal court. If a remedy is not forthcoming from the regulatory body, a plaintiff is generally directed to seek recompense in state court—commonly known as the exhaustion requirement. The two-part ripeness requirement described above, however, is not uniformly applied in cases raising the issue of an alleged taking.

■ The Eleventh Circuit has identified the standards to be applied in cases raising the issue of a taking, and has noted the apparent confusion of standards to be applied based on the nature of the claim alleged. *Eide v. Sarasota County,* 908 F.2d 716, 720–726 (11th Cir.1990) (dismissing as unripe claims brought under § 1983 for the denial of a rezoning request after characterizing them as an as-applied challenge on the basis of arbitrary and capricious due process violations), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991). The following summary is based on that court's description of the four types of claims available to a plaintiff presenting a taking issue and the available remedies. A plaintiff can claim that her property was taken without just compensation by a regulation, in violation of the *just compensation clause of the Fifth Amendment,* i.e., that there is no provision to award her compensation; the remedy available to a successful plaintiff is monetary compensation for actual loss of value. Alternatively, a plaintiff may claim that the application of a regulation destroys the value of her property to such an extent that it is a taking by eminent domain—which the Eleventh Circuit identifies as a *due process takings* claim; the remedy is invalidation of the application of the regulation and, perhaps, actual damages. *Id.* at 721. As a third option, a plaintiff may claim that the subject regulation is arbitrary and capricious, bearing no substantial relation to the public good, and is therefore an invalid exercise of the police power—the Eleventh Circuit has labelled such a claim as an *"arbitrary and capricious [or substantive] due process claim", id.* at 721–722; remedy for such a violation is determined by whether the regulation is challenged on its face (for which striking of the regulation is the remedy) or whether the challenge is directed to the regulation as applied (for which an injunction or damages may be awarded). The remaining claim available to a plaintiff is that the regulation denies *equal protection;* the remedy for a facial challenge on these grounds is a general injunction, and the remedy for an as-applied challenge would be an injunction against application of the regulation to plaintiff's property.

It bears emphasizing that Defendant SFWMD's actions in constructing and operating a water management structure, the G–211, do not neatly fit the traditional pattern of a regulatory taking. Unlike plaintiffs in many of the reported decisions involving taking claims as a result of the enactment of zoning ordinances or regulatory actions, Plaintiffs here attempt to argue that the Defendant SFWMD's actions in implementing what are apparently the policies and directives of the U.S. Army Corps of Engineers—in collaboration with the Everglades National Park—constitute a regulatory taking. Defendant SFWMD is not alleged to have promulgated a zoning ordinance, nor is there any allegation that Defendant SFWMD acted unilaterally in the decision to construct the G–211 structure. In fact, Plaintiffs assert that "experiments on water deliveries in the early and mid 1980's" were conducted by Defendant SFWMD *with the approval of the Corps of Engineers,* ¶ 27, *Fourth Amended Complaint.* Defendant SFWMD is also alleged to have served as local sponsor for a *Congressionally-adopted* plan of the Corps of Engineers—one which was incorporated into a Public Law in the early 1990's, ¶ 28, *Fourth Amended Complaint.* Nevertheless, Plaintiffs have chosen to pursue their inverse condemnation action under the Fifth Amendment (regarding the flowage easement) *solely* against Defendant SFWMD.

Although the language of Plaintiffs' General Allegations may at first blush appear to raise the issue of a due process takings claim

as to the flowage easement, Count II is silent as to a specific due process violation. Despite several attempts to plead their claims (this is Plaintiffs' Fourth Amended Complaint), and despite much language which obfuscates the issues, Plaintiffs have specifically alleged only a "taking [ ] without just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution" in Count II of the Fourth Amended Complaint. This is clearly the first type of claim as identified by the Eleventh Circuit, i.e., a Fifth Amendment takings claim.

Plaintiffs have raised an arbitrary and capricious [or substantive] due process claim in Count V, a procedural due process claim in Count VII, and an equal protection claim in Count VI—*none of which are directed against Defendant SFWMD.*[8] While there may be lingering confusion regarding whether Plaintiffs have raised the first or second type of taking claim (as described by the Eleventh Circuit) in Count II, it is not necessary to determine this matter for the purposes of the present analysis as the Court has determined that Plaintiffs' claim in Count II is not ripe. As the standards of ripeness regarding the final decision requirement are identical under the framework of either type of taking claim, *Eide* at 721, the Court will assume, without deciding, that Plaintiff may have attempted to raise both a Fifth Amendment *and* a due process taking claim. *See also, Williamson,* 473 U.S. at 186–200, 105 S.Ct. at 3116–23.

■ Inverse condemnation actions brought under the Fifth Amendment are subject to a ripeness requirement which flows from this Court's case or controversy-based jurisdiction, *see* Section 2, Article III, United States Constitution. If and only if Plaintiff is unable to obtain a remedy at the administrative and state court level, Plaintiff may pursue an action in federal court for a taking without just compensation.

■ The ripeness requirement as applied to inverse condemnation actions involves a determination both that a defendant's action is final, or complete, and that the plaintiff has exhausted her state court remedies, *see* discussion *infra.* This requirement is justified by the Court's need to determine whether a constitutional injury has occurred, i.e., whether the State has " 'fail[ed] to provide an adequate postdeprivation remedy for the property loss.' " *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 195, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985) (*quoting Hudson v. Palmer,* 468 U.S. 517, 532, n. 12, 104 S.Ct. 3194, 3203, n. 12, 82 L.Ed.2d 393 (1984)); *see also, Reahard v. Lee County,* 30 F.3d at 1415–18; *Executive 100 v. Martin County,* 922 F.2d 1536 (11th Cir.) (must seek compensation in state court if state compensation remedy is available), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991).

The determination that a plaintiff has cleared the hurdle of obtaining a final decision under the present allegations of a taking of a flowage easement involves a straightforward examination of Defendant SFWMD's conduct. It may be presumed that the construction of the G–211 structure and its subsequent operations are the "final decision" from Plaintiffs' perspective. Without conclusively determining the final decision issue, the Court proceeds to the second part of the ripeness inquiry—i.e., whether "all state procedures for just compensation have been utilized." *Eide* at 723. The Eleventh Circuit has noted the existence of a "futility exception" to the final decision requirement for just compensation and due process takings claims. *Id.* at 726. Presumably this futility exception may extend to the exhaustion requirement in narrow circumstances.

■ In general, no constitutional violation occurs until just compensation has been denied, *Williamson,* 473 U.S. at 194 n. 13, 105 S.Ct. at 3120 n. 13 (claims presented

---

**8.** Plaintiffs have not, however, in Count II, alleged that the actions of the Defendant SFWMD were arbitrary and capricious, nor have Plaintiffs alleged that the construction and operation of the G–211 water structure bears no substantial relation to the public good. Thus, no arbitrary and capricious [substantive] due process claim has been alleged against Defendant SFWMD. Similarly, Plaintiffs have not alleged in Count II that the Defendant SFWMD has denied Plaintiffs the equal protection of the laws.

were just compensation and due process). A state compensation procedure may be available even if that procedure remains "unsure and undeveloped", *New Port Largo v. Monroe County,* 873 F.Supp. 633, 639 (S.D.Fla. 1994) (*quoting Southview Assoc., Ltd., v. Bongartz,* 980 F.2d 84, 99 (2d Cir.1992)), *aff'd,* 95 F.3d 1084 (11th Cir.1996).

■ The Constitution of the State of Florida provides protection from the taking of private property without just compensation, *see* Section 6(a), Article X, Constitution of the State of Florida.[9] Florida law permits a landowner to bring inverse condemnation claims for regulatory takings, *see, e.g., New Port Largo v. Monroe County,* 873 F.Supp. at 639 (collecting several cases). Florida law implicitly recognizes a valid property interest in a flowage easement—one that can be conveyed and subsequently protected on behalf of the purchaser, *Anderson v. Bell,* 433 So.2d 1202 (Fla.1983) and for which a claim for taking may proceed, *see, e.g., Leon County v. Smith,* 397 So.2d 362 (Fla. 1st DCA 1981), *review denied,* 411 So.2d 383 (Fla.1981). As it appears that Plaintiffs' inverse condemnation action alleging the taking of a flowage easement may proceed in state court, I now must determine whether Plaintiffs may proceed initially in federal court and, thus, avoid the exhaustion prong of the ripeness requirement.

■ Plaintiffs have argued that application of the ripeness requirement, specifically the requirement that they exhaust state court remedies, would be futile. Such assertions, however, are insufficient to establish that Plaintiffs are entitled to avoid the exhaustion requirement. *Belvedere Military Corp. v. County of Palm Beach,* 845 F.Supp. 877, 879 (S.D.Fla.1994). The facts of the alleged futility in this case are not equivalent to those presented in, e.g., *A.A. Profiles, Inc. v. City of Ft. Lauderdale,* 850 F.2d 1483 (11th Cir.1988) (case ripe since downzoning[10]

decision was not appealable), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989). Plaintiffs were unsuccessful in state court in their original claim that Defendant SFWMD (and other defendants) had taken all of Plaintiffs' property—i.e., had taken Plaintiffs' fee simple interest.[11] The state court did not hold that Plaintiffs could not proceed with a claim for taking of a flowage easement. The court noted that Plaintiffs' amended complaint failed to state sufficient grounds to find that a "substantial ouster" had occurred, and held that no claim for a taking of property (i.e., in fee simple) by flooding had been asserted. The question of a taking of a flowage easement was never presented to the state tribunal—thus, no ruling was made.

The Ninth Circuit's guidance in *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, *amended,* 830 F.2d 968 (9th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988), that plaintiffs must demonstrate the existence of at least one meaningful attempt at obtaining satisfaction at the state level, has merit. Although the challenge in *Kinzli* was directed at a zoning decision, and was brought as an as-applied arbitrary and capricious [substantive] due process challenge, the underlying principles of sovereignty on which such decisions rest are applicable to the instant case.

■ As Plaintiffs' futility argument must fail, the Court now turns to Plaintiffs request that the Court exercise supplemental jurisdiction to permit Plaintiffs to proceed with Count II before this Court. Supplemental jurisdiction may be declined by the Court if the claim raises a novel or complex issue of State law, 28 U.S.C. § 1367(c)(1), or if there are compelling reasons for declining jurisdiction, 28 U.S.C. § 1367(c)(4).

■ This Court's acceptance of Count II under the supplemental jurisdiction described in 28 U.S.C. § 1367 would be equiva-

9. The state Constitution specifically permits provisions to be "made by law" for the taking of easements for the "drainage of the land of one person over or through the land of another", *see* Section 6(b), Article X, Constitution of the State of Florida (emphasis supplied).

10. It bears repeating that Defendant SFWMD's actions do not fit the pattern of a zoning decision.

11. *Bensch v. Metropolitan Dade County,* 541 So.2d 1329, 1331 (Fla. 3d DCA 1989), *review denied,* 549 So.2d 1013 (Fla.1989).

lent to suggesting that this Court sits in a preferable position to the courts of Florida when deciding a taking claim—despite the above discussion of ripeness concerns. I have determined that there are compelling reasons for declining jurisdiction, specifically, that the Plaintiffs have failed to show that each Plaintiff has petitioned Defendant SFWMD for relief, and then has proceeded to state court for a remedy. Additionally, there are few reported decisions on the issue of whether a *flowage easement* has been taken and, thus, this appears to be a relatively novel issue of State law. The Court declines to exercise supplemental jurisdiction under all of the above circumstances. Count II must be dismissed.

### b. Count III

█ Defendant SFWMD has presented compelling arguments that the state law claim of trespass (Count III) must be dismissed against Defendant SFWMD pursuant to the Eleventh Amendment. SFWMD was created initially by the Florida Legislature, and is subject to a large degree of control by the state—for example, members of the Governing Board are appointed by the Governor of the State of Florida, *see* Fla.Stat. § 373.073(1)(b)(4). Plaintiffs have failed to demonstrate any applicable exception to the Eleventh Amendment's prohibition against private suits brought against the state in federal court. The Supreme Court's decision in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which permits an exception to Eleventh Amendment immunity when state officials are sued in order to compel their compliance with federal law, does not support Plaintiffs' position. Accordingly, Count III must be dismissed against Defendant SFWMD.

For the foregoing reasons, it is

ORDERED AND ADJUDGED that **Defendant SFWMD's Motion to Dismiss Counts II and III is GRANTED.**[12]

**12.** Acts by the Defendant SFWMD are identified in only six (i.e., in less than 12%) of the paragraphs found in Plaintiffs' General Allegations. In fact, Plaintiffs' case appears to be directed primarily against the non-SFWMD Defendants. The result of the Court's dismissal of Counts II and III does not alter the Plaintiffs case as to the non-SFWMD Defendants, and permits the Plaintiffs to proceed against Defendant SFWMD as to

*MOTION TO DROP PARTIES*

Plaintiffs' Fourth Amended Complaint seeks to add approximately 20 new plaintiffs, while dropping approximately 38 of the original plaintiffs (18 of the original plaintiffs remain). Defendant SFWMD argues that Plaintiffs' unilateral attempt to add these parties is in violation of Rule 21, Fed.R.Civ. P., which provides in pertinent part: "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Defendant also argues that the claims of the additional/new parties are premature due to their failure to exhaust their state administrative remedies. Plaintiffs' complaint asserts that the "exhaustion of administrative remedies has been accomplished or is futile ... [F]urther pursuit of administrative remedies would be futile ...", *Fourth Amended Complaint,* ¶¶ 7–8. The Court has granted Defendant SFWMD's Motion to Dismiss Counts II and III and, thus, does not address the Motion to Drop Parties regarding those already-dismissed Counts.

Plaintiffs were not given explicit leave by the Court to add these parties in this Fourth Amended Complaint. Even if Plaintiffs were to properly petition the Court for such leave, the Plaintiffs must show that these parties have standing in order to proceed. At least four of the Plaintiffs[13] acquired the property at issue in 1992, *subsequent* to the construction of the G–211 structure by Defendant SFWMD. Another of the proposed plaintiffs, M & M Farms, is described as a commercial *tenant,* without any specificity as to length of tenancy, lease terms, etc., *see* ¶ 13(b) of the Fourth Amended Complaint. It appears that these Plaintiffs may have difficulty proving their right to proceed in the face of future challenges by Defendants. In addition, as Defendant SFWMD has argued, a federal taking claim such as is alleged in Count I is premature prior to the

Count I—a properly pleaded inverse condemnation claim under the Fifth Amendment.

**13.** Plaintiffs Frantz and Evagelia Cham (¶ 11(r) of the Fourth Amended Complaint) and Plaintiffs Christopher Scott and Erick Alexander Bensch (¶ 12(e) of the Fourth Amended Complaint) are alleged to have acquired their properties in 1992.

exhaustion of all state procedures. Plaintiffs have not disputed Defendant SFWMD's allegation that the proposed additional parties have not exhausted state procedures as to any of the claims in the Fourth Amended Complaint. In addition, Plaintiffs Fourth Amended Complaint, at ¶ 71, indicates that some property owners in the pertinent geographic area have been exempted from the deleterious effects of the subject acts. While the Court entertains serious questions as to the right of the new Plaintiffs to be included in this action, the Motion of Defendant SFWMD to drop these parties will be denied. However, the Court encourages the parties, after appropriate discovery, to file whatever motions may be proper to eliminate those additional Plaintiffs who have been improperly joined. In this pursuit, the Court encourages resolution of such questions as exhaustion of remedies, application of statute of limitations, standing, etc.—which will address the issue of purchase after full knowledge of the events and circumstances which allegedly form the basis for the cause of action in Count I.

ORDERED AND ADJUDGED that **Defendant SFWMD's Motion to Drop Parties is DENIED, without prejudice.**