698 So.2d 384 (1997)
INTRACOASTAL NORTH CONDOMINIUM ASSOCIATION, INC., Appellant,
v.
PALM BEACH COUNTY, a political subdivision of the State of Florida, Appellee.
No. 96-1712.
District Court of Appeal of Florida, Fourth District.
August 27, 1997.
Robert A. Eisen of Eisen & Willits, Boca Raton, for appellant.
Robert P. Banks and Leonard Berger, West Palm Beach, for appellee.
POLEN, Judge.
The Intracoastal North Condominium Association (the Association) appeals a final judgment denying its Petition for Inverse Condemnation. We affirm.
The Association filed suit against Palm Beach County and the Department of Transportation alleging inverse condemnation and negligence related to the construction of the Palmetto Park Bridge in 1985. The Association's one-third acre parcel of property is located on the Intracoastal Waterway (the Intracoastal), and abuts the bridge to the north. The Association alleged construction of the bridge and the resulting change in the current of the Intracoastal deprived it of all beneficial use and enjoyment of its wood boat docks, which previously accommodated the perpendicular mooring of five to seven boats on the Intracoastal.
As part of the construction of the new Palmetto Park Bridge, the east approach to the bridge was altered and a publicly owned peninsula, (the East Bascule Peninsula), was excavated and removed. Prior to excavation of the peninsula, the channel under the bridge narrowed from 250 feet to 85 feet, creating a point of constriction resulting in swift tidal currents flowing under the bridge. Navigation under the bridge was difficult and at times dangerous. The design of the new bridge and excavation of the peninsula enlarged the channel to 212 feet, improving navigation and reducing the dangerous condition. The reduction in tidal currents and improvement in navigation safety was a specific design goal of the new bridge construction.
The excavation of the peninsula also resulted in tidal currents of three to four knots flowing past the Association's wood docks and on the seawall. These tidal currents varied in intensity during days of the month and times of the year. The waters are still during slack tide, which occurs during tide changes, and lasts approximately thirty minutes, four times per day. Except for these periods of slack tide, the tidal currents flowing past the wood docks diminished the Association's *385 access to the Intracoastal and ability to moor boats at the docks. The parties stipulated that except during slack tide, a recreational boater cannot maneuver safely within the close space between the new bridge and wood docks to overcome the tidal currents and moor at the docks and seawall. The docks are not designed for parallel mooring, which would present the same problems and risks.
Neither party has directed this court to case law addressing the precise issue raised here, nor has our research revealed such a case. The learned trial judge analyzed this issue as best he could in light of the paucity of case law addressing riparian rights, and we see no reason to reject the judge's findings and conclusions. Based on evidence admitted through the parties' stipulated facts and the testimony offered during trial, the judge found the Association was impacted by the removal of the East Bascule Peninsula, yet it retained the same waterfront. The only change was the speed with which the water flowed past the Association's property during the incoming and outgoing tides. The judge concluded this change in the speed of water flowing past the property was neither a physical invasion nor an appropriation of the Association's property for which the county was responsible for compensation.
The judge found that except at slack tide, safe perpendicular docking at the Association's property was impossible for all but the most skilled boaters, and parallel docking, while possible, was difficult. He found these circumstances constituted, at most, a diminution in the Association's use of its docks and rejected the Association's contention a taking occurred. The judge reasoned the Association's riparian right of access was subject to the superior right of the public as to navigation and commerce on the Intracoastal. He relied on Ferry Pass Inspectors' & Shippers' Ass'n v. White's River Inspectors' & Shippers' Ass'n, 57 Fla. 399, 48 So. 643 (Fla.1909), which provides in pertinent part:
Among the common law rights of those who own land bordering on navigable waters... are the rights of access to the water from the land for navigation and other purposes expressed or implied by law.... Subject to the superior rights of the public as to navigation and commerce... a riparian owner may erect upon the bed and shores adjacent to his riparian holdings ... wharves, or other structures to facilitate his business or pleasure; but these privileges are subject to the rights of the public to be enforced by proper public authority....
Id. at 645.
Ferry Pass supports the conclusion the Association's riparian right of access was subservient to the superior right of the public to safe navigation on the Intracoastal Waterway, such that the Association's diminished access to the Intracoastal did not constitute a compensable taking. The Association's citation to Webb v. Giddens, 82 So.2d 743 (Fla.1955), is not compelling because in Webb the court found a special injury where the state's removal of a bridge denied the riparian owner all access to the main body of a lake. Id. at 744-745. The riparian owner was in the business of renting boats. The instant case does not concern such a complete denial of all access to navigable water.
We also reject the Association's attempt to analogize the instant case to Leon County v. Smith, 397 So.2d 362 (Fla. 1st DCA 1981), where a government body's redirection of water resulted in the flooding of real property. Unlike the facts of Smith, the government's conduct here has not rendered the Association's property useless.
Finally, the Association's reliance on road construction cases, including Palm Beach County v. Tessler, 538 So.2d 846 (Fla. 1989), and its progeny, is misplaced. Even if we removed from consideration the superior right of the public to safe navigation, a principle unique to cases involving riparian rights, we do not agree with the Association's contention that the trial judge found the Association's access to the Intracoastal was "substantially diminished" as that concept is defined in Tessler. Therefore Tessler is inapposite.
We do not address the trial judge's reliance on the doctrine of damnum absque injuria (loss, hurt, or harm without injury in *386 the legal sense), due to our affirmance based on the judge's primary reasoning.
AFFIRMED.
PARIENTE and GROSS, JJ., concur.