OPINION ON MOTION FOR REHEARING EN BANC, MOTION FOR REHEARING, MOTION FOR CLARIFICATION, AND MOTION FOR CERTIFICATION
THOMAS, J.
This cause is before us on Appellee’s motion for rehearing en banc, motion for rehearing, motion for clarification, and motion for certification. We deny the motion for rehearing en banc, rehearing, and certification, and grant only to clarify the two separate takings. Accordingly, we withdraw our former opinion of November 21, 2008, and substitute in its place this corrected opinion.
*719 Appellant, as successor in interest to the original plaintiffs below,[1] appeals a final judgment entered in favor of Appellee Walton County (County). We affirm the final judgment on all claims except Appellant’s inverse condemnation claims, which require us to consider whether the County engaged in a taking of private property when it diverted water across Appellant’s property and allowed the water diversion to continue after an emergency passed. We hold as a matter of law that the County’s action constitutes a taking of Appellant’s private property for a public purpose and that her claim is not precluded by section 252.43(6), Florida Statutes. Accordingly, we reverse and remand for the court to enter a final judgment in favor of Appellant on her inverse condemnation claim.

Facts and Procedural History

William and Patricia Hemby purchased the subject property in 1992. The upper portion of this property had previously experienced water overflow from an outflow of Oyster Lake, and the water eventually flowed into the Gulf of Mexico. This previous water flow was stabilized in 1988 with the assistance of state authorities. Between 1988 and 1995, no water crossed the upper portion of Appellant’s property, thus making the upper portion of the land available for development. It was during this time that Appellants purchased the subject property.
In 1995, following Hurricane Opal, the County reconfigured the drainage from the outflow and diverted water through the upper portion of Appellant’s property. This action was taken to alleviate flooding of other property caused by rising water in Oyster Lake when the outflow culverts became blocked. After this reconfiguration, from 1996 through 1999, the County cooperated with Appellant to help redirect the flow away from the subject property and restore the water flow to pre-Opal conditions; however, these efforts were unsuccessful. In 2004, the County successfully redirected the water flow away from Appellant’s property, but in 2005, at least once under emergency conditions, the County diverted the water flow across the upper portion of the subject property in order to protect a neighbor’s home and property. This water diversion remains in place.
The County acknowledges that it diverted water across the upper portion of Appellant’s property in 1995 and 2005, primarily to save other private property, but asserts that this water diversion simply restored the natural processes in existence before the Hembys purchased the property in 1992.
A bench trial was conducted on Appellant’s two claims of inverse condemnation for the periods of 1996 through 2004, and 2005 onward, and final judgment was entered for the County. The trial court ruled in part that diverting the water could not constitute a taking because the County’s reconfiguration followed declared emergencies under section 252.43(6), Florida Statutes. The trial court found that this reconfiguration simply restored the natural drainage pattern from Oyster Lake that predated any artificial structures or drainage improvements, and concluded that Appellant could not rely on the drainage patterns established in 1988 and *720 assume the property could be used for development. Thus, the trial court concluded that the Hembys did not engage in due diligence before buying the property; therefore, because the County only responded to emergency conditions by restoring the outflow and allowing Oyster Lake to drain, and this drainage was a natural occurrence, the County did not legally take Appellant’s property.

Analysis

We review the trial courts factual findings to determine whether they are supported by competent, substantial evidence. When they are not, it is the duty of the appellate court to reverse. See Beaty v. Miller, 480 So.2d 196, 197 (Fla. 1st DCA 1985). We review the court’s legal conclusions de novo. See S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 319-20 (Fla.2005).
The critical undisputed fact in this case is that before the Hembys purchased the subject property in 1988, the ditch draining the Oyster Lake outflow was stabilized and did not discharge water across the upper portion of the property. This ditch was permitted by the Department of Environmental Regulation as part of a ditch relocation and stabilization project. This drainage was not changed until the County acted in 1995 to alleviate flooding caused when the Oyster Lake outflow was clogged after Hurricane Opal. While the County’s actions in clearing the culvert to alleviate flooding of other property may have been prudent and commendable, and authorized by statute, the fact remains that the County acted in a manner that caused flooding on Appellant’s property. Hurricane Opal did not flood Appellant’s property; it was the County’s action in response to the hurricane that caused the flooding. This case would be in a completely different posture had Appellant’s property been flooded by the hurricane itself, without the County’s intervention.
The trial court’s findings that Oyster Lake previously discharged water onto Appellant’s property “for centuries” is not, in our view, legally relevant. The relevant fact is that the Hembys could reasonably rely on the drainage pattern established by the drainage stabilization in 1988, and when the County reconfigured that drainage pattern, it resulted in a taking. Schick v. Fla. Dep’t of Agric., 504 So.2d 1318 (Fla. 1st DCA 1987), rev. denied, Dep’t of Agric. v. Schick, 513 So.2d 1060 (Fla.1987). Government cannot choose to act and protect one property owner by diverting floodwater onto the property of another without compensating that property owner. Although Appellant’s property may have flooded in the distant past, such flooding was eliminated in 1988.
We have previously held that a county takes private property when it directs a concentrated flow of water from one property onto another, permanently depriving the owner of all beneficial enjoyment of their property. Leon County v. Smith, 397 So.2d 362, 364 (Fla. 1st DCA 1981); Martin v. City of Monticello, 632 So.2d 236, 237 (Fla. 1st DCA 1994). To assert an inverse condemnation claim based on such governmental action, the property owner must demonstrate that the government’s action constitutes a substantial interference with her private property rights for more than a momentary period, and will be continuous or reasonably expected to continuously recur, resulting in a substantial deprivation of the beneficial use of her property. See Elliott v. Hernando County, 281 So.2d 395, 396 (Fla. 2d DCA 1973) (noting that “rain is a condition that is reasonably expected to continually re-occur in the future)”; Assoc. of Meadow Lake, Inc. v. City of Edgewater, 706 So.2d 50 (Fla. 5th DCA 1998); cf. Diamond K *721 Corp. v. Leon County, 677 So.2d 90 (Fla. 1st DCA 1996) (holding that no taking occurred as a result of flooding of a creek in the appellant’s property because the appellant had not shown that a continuing physical invasion occurred, depriving it of all reasonable use of its property). A taking is more likely to have occurred when a governmental action confers a public benefit rather than prevents a public harm. Graham v. Estuary Properties, Inc., 399 So.2d 1374, 1381 (Fla.1981).
In developing her property, Appellant does not seek to change its natural environmental conditions, but rather seeks to protect it from the County’s water flow diversion. The County admits that it diverted water across Appellant’s property, and the undisputed testimony establishes that the ditch the County constructed caused water to divert and flow onto Appellant’s property. The County allowed the ditch that it created during emergency conditions to remain as a drainage easement on Appellant’s property long after the emergency passed. We find that the County’s reconfiguration conferred a public benefit on other property owners rather than prevented a public harm. We hold that this constitutes a taking.
Based on these undisputed facts, the court’s legal conclusion that “there has been neither a continuing physical invasion of the property nor a substantial deprivation of all beneficial use” is not supported by competent, substantial evidence. As in Smith, the water diversion here is a permanent or continuous physical invasion of Appellant’s property, rendering it useless and permanently depriving Appellant of the beneficial enjoyment of her property.
We assume arguendo that the County’s reconfigurations in 1995 and 2005 were authorized pursuant to section 252.43(6).[2] Further, Appellant concedes that the County’s actions constituted a proper public purpose, arguing only that regardless of the legitimacy of the County’s actions in diverting water across her property under its police power, she is entitled to compensation for the taking and that the County does not enjoy statutory immunity during an emergency. See Art. X, § 6, Fla. Const. (“No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner[.]”); Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 533-34 (1929) (explaining that the power of eminent domain can be exercised only for a valid public purpose).
We agree with Appellant and hold that section 252.43(6) does not grant the County immunity during an emergency and thus preclude Appellant, as an innocent property owner, from initiating a takings claim. See Storer Cable T.V. of Fla., Inc. v. Summerwinds Apartments Assocs., Ltd., 493 So.2d 417, 418 (Fla.1986) (holding that a statute authorizing television service providers to enter private property without compensation to owners is unconstitutional). Regardless of the County’s statutory right to excavate drainage paths to preserve property under section 252.43(6), the Florida Constitution requires compensation for an adversely affected owner. See Art. X, § 6, Fla. Const.; Notami Hosp. of Fla., Inc. v. Bowen, 927 So.2d *722 139, 142 (Fla. 1st DCA 2006) (“State constitutions are limitations upon the power of state legislatures. Consequently, a statute enacted by the Legislature may not restrict a right granted under the Constitution”) (citations omitted), aff'd, 984 So.2d 478 (Fla.2008). Thus, the County’s statutory authority under section 252.43(6), Florida Statutes, must yield to Article 10, section 6 of the Florida Constitution, which requires the County to compensate Appellant.
We find that Appellant’s claims are not precluded by section 252.43(6), Florida Statutes, and that two takings occurred when the County diverted water across Appellant’s property — the first taking occurred during the period of 1995 through 2004, and the second from 2005 to the present date. We therefore reverse the final judgment and remand with directions to enter judgment for Appellant on her inverse condemnation claims and to determine the value of the taking. All other issues raised by Appellant are affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED.
BROWNING, J., concurs; BARFIELD, J., dissents with written opinion.

. William R. Hemby and Patricia Hemby sued Walton County in 2002 for inverse condemnation, trespass and negligence. Mr. Hemby died in November 2006, and his estate’s interest in the suit was transferred to the William R. Hemby Revocable Trust, with Mrs. Hemby as trustee. Mrs. Hemby died while this appeal was pending, and her estate's interest in the suit was transferred to the Patricia S. Hemby Revocable Trust, with her daughter, Cozette R. Drake, as successor trustee of both trusts. Appellant is Ms. Drake.

. Section 252.43(6), Florida Statutes, states:
(6) Nothing in this section applies to or authorizes compensation for the destruction or damaging of standing timber or other property in order to provide a firebreak or damage resulting from the release of waters or the breach of impoundments in order to reduce pressure or other danger from actual or threatened flood or applies to or authorizes compensation beyond the extent of funds available for such compensation.